IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RHONDA R. POPE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 1:11CV946 |
| ) | |
| THOMAS J. VILSACK, ) | |
| Secretary of Agriculture for the United States ) | |
| Department of Agriculture, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before this Court on a Motion for Summary Judgment [Doc. #18] filed by Defendant Thomas J. Vilsack, Secretary of Agriculture for the United States Department of Agriculture ("Defendant"). Also before the Court is a Motion to Strike [Doc.#23] filed by Plaintiff Rhonda R. Pope ("Plaintiff") seeking to strike certain portions of the exhibits attached to Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court will deny Plaintiff's Motion to Strike and will grant in part and deny in part Defendant's Motion for Summary Judgment.

I.      FACTUAL AND PROCEDURAL BACKGROUND

From December of 1990 to September of 2005, Plaintiff worked for the United States Department of Agriculture ("USDA") as a program technician for the USDA's Farm Service Agency ("FSA"). In September of 2005, Plaintiff was accepted to the USDA's training program and became a County Operations Trainee ("COT"). The nine-month training program was designed to train and certify COTs to serve in the managerial position of County Executive

Director ("CED") for the FSA. CEDs work directly with Farmer County Committees to manage, implement, administer and facilitate FSA programs and services at the local level. The Farmer County Committees select the CEDs for vacant positions in their respective counties.

Beginning in April of 2006, Plaintiff was assigned to work in the Caswell County FSA office as a COT. Emmett Rogers, the then-CED of Caswell County, served as Plaintiff's COT trainer while Plaintiff was working in the Caswell County office. In June of 2006, Plaintiff completed her COT training program and was certified as a COT. Plaintiff achieved an overall rating of 95.1% across various rated programs and received an average rating of "superior" on her training reviews. As a certified COT, Plaintiff was eligible for promotion to the position of CED in North Carolina and was required to apply for every CED position that came available in North Carolina until she was hired as a CED. When Plaintiff learned that Emmett Rogers had been hired to serve as CED of Pamlico County, Plaintiff decided to focus her efforts on the soon-to-be vacant CED position in Caswell County. Plaintiff contends that the Caswell County CED position was "ideal" for her because she was raised in Caswell County, her parents still lived there, and the County was a reasonable commute from her home.[1]

In view of the upcoming vacancy for the Caswell County CED position, Plaintiff visited Walter ("Sam") Butler, the vice-chair of the Farmer County Committee of Caswell County ("the

---

[1] Plaintiff also applied for all other vacant CED positions, as required, but was not hired for another position prior to the advertisement of the CED vacancy in Caswell County. In August of 2007, after the events giving rise to the present action, Plaintiff was hired as the CED of Ashe/Alleghany County. Thereafter, from October of 2007 to January of 2008, Plaintiff worked as CED of Mecklenburg County, Virginia. Plaintiff resigned from the USDA in January of 2008 to begin work with North Carolina Farm Bureau Insurance because it was closer to her home. (Pl.'s Depo. 25:2-26:16, [Doc. #19-2]).

2

Committee"). Plaintiff had known Mr. Butler since she was a child, as Mr. Butler's family previous lived on Plaintiff's family's farm in Caswell County. Plaintiff wanted to meet with Mr. Butler "to express her interest in the Caswell County CED position and receive any advice [Mr.] Butler may have regarding her interest." (Pl.'s Summ. J. Resp. at 4, [Doc. #22]). During the meeting, Plaintiff contends that Mr. Butler told Plaintiff that she would be "'good for the CED job'" given her experience and background. (Pl.'s Summ. J. Resp. at 4, [Doc. #22]). However, Plaintiff further contends that Mr. Butler then told Plaintiff that the Committee was "'fearful of hiring another woman'" as CED of Caswell County due to tensions and problems in the past between an all female staff and a female CED. (Pl.'s Summ. J. Resp. at 5, [Doc. #22]). Plaintiff contends that Mr. Butler further told her that being female would be difficult for Plaintiff to overcome with the Committee in Caswell County. (Pl.'s Depo. 51:12-19, [Doc. #19-2]).

On August 22, 2006, prior to advertising the vacancy for the Caswell County CED position, the Committee held a meeting and received Caswell County staff members Jill Rudisill, Beth Ware, and Tracey Walker. According to Plaintiff, Ms. Rudisill, Ms. Ware, and Ms. Walker "spread gossip about Plaintiff to the members of the Committee regarding the two month work period that Plaintiff spent in Caswell County" as a COT. (Pl.'s Summ. J. Resp. at 5, [Doc. #22]). Plaintiff was not present at the Committee meeting on August 22, 2006, nor was she provided any opportunity to defend against or comment on the discussion held therein at any time relevant to this case. Per the Minutes of the Committee meeting, in addition to hearing the staff members "concerns" about Plaintiff, "[t]he pros and cons of advertising vs. not advertising and statewide vs. nationwide advertising for the vacant [CED] position were discussed. The

3

[Committee] decided they would like to have a choice of candidates and wanted the vacant CED position in Caswell County to be advertised nationwide." (Ex. GE-5e to Pl.'s Summ. J. Resp. at 66, [Doc. #22-7]).[2]

On September 21, 2006, the USDA posted, nationwide, an official vacancy announcement for the Caswell County CED position. Three people submitted applications for the position: Beverly Clark (female), Billy Merritt (male), and Plaintiff. Soon after the vacancy closed to applicants, the state executive director deemed Ms. Clark and Mr. Merritt ineligible for consideration for failure to file a performance appraisal as part of their respective applications. As a result, Plaintiff was the only eligible candidate for the Caswell County CED position. On the morning of November 3, 2006, the day of Plaintiff's scheduled interview, the Committee met to discuss the vacant CED position, the number of applicants for the position, and the interview process. (Ex. GE-5e to Pl.'s Summ. J. Resp. at 67, [Doc. #22-7]). Thereafter, the Committee interviewed Plaintiff for forty-five minutes. After Plaintiff's interview concluded, the Committee met again to discuss the interview. According to the Committee meeting Minutes, the Committee "was adamant that they wanted a choice of candidates and that they did not want to be forced to hire the only candidate that had a complete application." (Ex. GE-5e to Pl.'s Summ. J. Resp. at 67, [Doc. #22-7]). The Committee then filled out the interview matrix used to evaluate candidates "based on their impression of [Plaintiff's] responses to the interview questions." (Ex. GE-5e to Pl.'s Summ. J. Resp. at 67, [Doc. #22-7]).

---

[2] The Court will refer the page numbers provided by the Clerk's Office when referring to this exhibit, rather than the page numbers set forth on the original documents.

On November 8, 2006, Plaintiff received a letter informing her that she was not selected for the vacant CED position, that the vacancy was going to be re-advertised, and that she would not need to re-apply for the position to receive consideration following re-advertisement of the vacancy. The USDA re-advertised the Caswell County CED position nationally a second time on November 13, 2006. In addition to Plaintiff, two other candidates submitted applications: Billy Merritt (male), the same candidate who had applied in response to the first advertisement, and John Poumar (male). Mr. Poumar was deemed ineligible for consideration, leaving Plaintiff and Mr. Merritt as the only qualified candidates. The Committee interviewed Plaintiff a second time. The interview consisted of asking and answering twelve questions different from those asked during the first interview, and again lasted approximately forty-five minutes. Plaintiff contends that the Committee did not accept her letter of reference during the interview process. After Plaintiff's interview concluded, the Committee conducted the interview of Mr. Merritt over the phone, asking the same twelve questions as were asked of Plaintiff. Mr. Merritt's interview lasted approximately ten (10) minutes. Thereafter, the Committee selected Mr. Merritt to fill the vacant Caswell County CED position and informed Plaintiff that she had not been selected. When Plaintiff inquired about why she was not selected for the Caswell County CED position, District Director Robin Hampton, who was present for both candidates' interviews, told Plaintiff that "the Committee chair is a 'very direct, brief, and to-the-point person' and that Plaintiff had provided 'too much information when answering questions about her qualifications for the job.'" (Pl.'s Summ. J. Resp. at 10, [Doc. #22]; Ex. 14 to Decl. of Robin Hampton, [Doc. #19-29]).

On January 22, 2007, after consulting with EEO counselors following each of her two interviews for the Caswell County CED position, Plaintiff received a notice of right to file a formal Complaint of discrimination against Defendant. Plaintiff timely filed such Complaint on January 26, 2007, raising claims of gender discrimination and retaliation. Thereafter, on September 4, 2009, the USDA issued its Final Agency Decision pertaining to Plaintiff's formal discrimination Complaint. In its Final Agency Decision, the USDA, held that "the weight of the evidence indicates that discrimination under a mixed motive analysis occurred with regard to the [Plaintiff's] non-selection, based on sex." (Final Agency Decision at 24, [Doc. #22-5]).[3] The USDA further held that "[t]he weight of the evidence indicates that discrimination did not occur based on reprisal." (Final Agency Decision at 24, [Doc. #22-5]). Based on its decision, the USDA awarded Plaintiff attorney's fees and costs and issued injunctive relief against Defendant. The USDA did not, however, order that Defendant hire Plaintiff for or promote Plaintiff to any employment position. Plaintiff appealed the Final Agency Decision to the EEOC's Office of Federal Operations ("OFO") on October 14, 2009. The OFO issued its final decision on August 4, 2011, affirming the USDA's Final Agency Decision. Thereafter, Plaintiff filed her Complaint in this case alleging both gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and seeking, in part, "a position that is within her career path and substantially similar to that which she had applied." (Pl.'s Summ. J. Resp. at 2, [Doc. #22]).

---

[3] The Court refers to the page numbers provided on the original document rather than the page numbers assigned to the document by the Clerk's Office.

Defendant now moves for Summary Judgment contending that there are no genuine issues of material fact as to any of Plaintiff's claims and, therefore, Defendant is entitled to judgment as a matter of law. In addition to filing a Response to Defendant's Motion for Summary Judgment, Plaintiff has filed a Motion to Strike certain portions of the exhibits attached to Defendant's Motion for Summary Judgment. Because resolution of Plaintiff's Motion to Strike bears on what evidence the Court may consider in resolving Defendant's Motion for Summary Judgment, the Court will address Plaintiff's Motion to Strike first.

## II. PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike certain portions of the exhibits, including various Declarations, attached to Defendant's Motion for Summary Judgment. As set forth in Rule 56 of the Federal Rules of Civil Procedure, affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff challenges specific portions of the Declarations of District Director Robin Hampton, State Executive Director Keith Weatherly, Committee members Irvin Thompson, Helen Lunsford, and Walter ("Sam") Butler, and Caswell County staff members Jill Rudisill and Beth Ware. In addition, Plaintiff challenges portions of the Committee meeting Minutes for August 22, 2006. Plaintiff's challenges in its Motion to Strike generally fall within two categories: (1) that statements within the exhibits constitute inadmissible hearsay; or (2) that statements within the exhibits are not based on personal knowledge. For purposes of this Memorandum Opinion and Order, the Court will discuss and rule on each of the general categories Plaintiff has raised as being

7

objectionable at this stage, but will leave open the opportunity for the parties to raise specific objections for the Court's consideration at trial as necessary.[4]

With regard to Plaintiff's hearsay challenge, Plaintiff contends that statements made to the Committee or to Robin Hampton regarding Plaintiff's prior job performance constitute inadmissible hearsay and should not be considered by the Court. Plaintiff's challenge in this regard focuses on the Declarants' references to the statements made by female staff members Jill Rudisill, Beth Ware, and Tracey Walker at the Committee meeting held on August 22, 2006, and statements about Plaintiff by USDA employees to Robin Hampton at various times prior to the interview process for the Caswell County CED position. In response to Plaintiff's hearsay challenges, Defendant contends that the challenged statements are offered not for the truth of the matter asserted, but rather to show the state of mind of the Committee members during the selection process. In other words, Defendant contends that it offers the challenged statements to show what effect hearing those statements had on the listener.

To the extent that Defendant contends it is not offering the statements made regarding Plaintiff's prior work performance for the truth of the matter asserted, but rather to show what effect, if any, such statements had on the person who heard them, the challenged statements would not constitute hearsay under the Federal Rules of Evidence. See Fed. R. Evid. 801;

---

[4] The Court notes that this Memorandum Opinion and Order was entered on the docket prior to the last day on which Plaintiff could have filed a Reply brief to her Motion to Strike. Nevertheless, to the extent that such Reply would have addressed Plaintiff's objections to Defendant's Response, the Court concludes that it still would deny Plaintiff's Motion to Strike for the reasons set forth herein. However, as noted throughout this Memorandum Opinion and Order, Plaintiff remains free to re-raise the objections set forth in her Motion to Strike, and any that she would have raised in a Reply brief, at trial for the Court's consideration at that time.

United States v. Guerrero-Damian, 241 Fed. App'x. 171, 173 (4th Cir. 2007) ("A statement is not hearsay if it is offered to prove knowledge, or show the effect on the listener or listener's state of mind."). Therefore, the Court will not strike the challenged statements at this stage and will consider the statements, and references made to the statements, for the limited purpose offered by Defendant. However, as noted above, if it is necessary during trial, the parties may raise specific objections for the Court's consideration at that time.

Plaintiff also challenges portions of the Declarations on the grounds that the Declarants lack personal knowledge of the facts set forth therein. For example, Plaintiff contends that none of the Declarant's have personal knowledge of Plaintiff's prior work performance. Instead, Plaintiff contends that the Declarants base their Declarations only on what they heard about Plaintiff's prior work history from third parties. Although Plaintiff may be correct that the Committee members may not have observed Plaintiff in her work setting, the evidence on the record shows that Ms. Hampton, and each of the Committee members were present at the meeting on August 22, 2006, where staff members made statements about Plaintiff's work performance. Therefore, the evidence shows that each person present had personal knowledge of any statements made or discussions had at that meeting. Moreover, as noted above, to the extent that references to the challenged statements are being offered to show the effect on the listener and not for the truth of the matter asserted, no present hearsay problem exists.

Plaintiff further challenges references by individual Committee members to the motivations or beliefs of the Committee as a whole. Plaintiff contends that individual Committee members can do no more than speculate or offer conclusory statements about the

9

true motivations or beliefs of the Committee as a whole. In this regard, the Court notes that the challenged statements appear to involve perceptions or opinions of individual Committee members in the context of the decision-making process used by the entire Committee. Therefore, to the extent that any Committee member participated in discussions or the decision stemming from those discussions, as a part of the Committee, that individual Committee member would have personal knowledge of the Committee's motivations throughout the decision-making process.

In addition, Plaintiff challenges Ms. Hampton's and Mr. Weatherly's statements regarding the motivations or beliefs of the Committee. In that regard, Plaintiff contends that because Ms. Hampton and Mr. Weatherly are not Committee members, they cannot speak competently to the true beliefs or motivations of the Committee. However, the evidence shows that Ms. Hampton was present at all Committee meetings and was present during all interviews and follow-up discussions relevant to this case. In addition, the evidence shows that the Committee contacted Mr. Weatherly, as the State Executive Director, to discuss the interview procedures and the Committee's perceptions at the time. Therefore, to the extent that Ms. Hampton and Mr. Weatherly either participated in or provided counsel during the interview and decision-making process, they would have personal knowledge of the Committee's motivations during the decision-making process. However, the Court notes that to the extent that any of the challenged statements might be construed as legal conclusions, the Court, in deciding the motion for summary judgment, will draw its own conclusions without being swayed by any potentially impermissible material. Therefore, based on the foregoing, the Court will deny

10

Plaintiff's Motion to Strike at this time, without prejudice to the parties raising specific objections at trial as necessary.

III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

   A.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. Moreover, the Court should not grant a motion for summary judgment "'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)). Nevertheless, a mere scintilla of evidence is insufficient to withstand a motion

for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Instead, there must be evidence "on which the jury could reasonably find for the plaintiff." Id. With this standard in mind, the Court will address the merits of Plaintiff's gender discrimination and retaliation claims to determine whether Defendant is entitled to judgment as a matter of law on either claim.

    B.    <u>Plaintiff's Gender Discrimination Claim</u>

Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. Plaintiff alleges that Defendant engaged in gender discrimination in violation of Title VII when Defendant failed to promote Plaintiff, on two separate occasions, to the position of Caswell County CED. A plaintiff may establish a claim of intentional discrimination sufficient to avoid summary judgment under two frameworks. First, a plaintiff may proceed under a mixed-motive framework, in which "it is sufficient for the [plaintiff] to demonstrate [through direct or circumstantial evidence] that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). A plaintiff may also proceed under the McDonnell Douglas[5] pretext framework, in which a plaintiff "after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

discrimination." Hill, 354 F.3d at 285. "Regardless of the type of evidence offered by Plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" Id. at 286 (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000)). The Court will address the merits of Plaintiff's gender discrimination claim under both frameworks.

1. Mixed-Motive Framework

As noted above, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). To prevail under this mixed-motive analysis, "the employee does not have to demonstrate that the prohibited discrimination was the sole motivating factor . . . so long as it was a motivating factor." Fisher v. Maryland Dep't of Pub. Safety & Corr. Serv., 461 Fed. App'x 242, 243 (4th Cir. 2012) (citing Hill, 354 F.3d at 284). However, "[t]he protected trait 'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Hill, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 141, 120 S. Ct. at 2105).

In the present case, the Court finds that there exists a genuine issue of material fact as to whether Defendant was motived, at least in part, by Plaintiff's gender in its decision not to promote Plaintiff to the Caswell County CED position. In so finding, the Court notes that

13

Plaintiff has presented evidence of her conversation with Mr. Butler, wherein Mr. Butler purportedly told Plaintiff that, based on prior negative experiences, the Committee was concerned about hiring a female CED to supervise an all female staff. In addition, Plaintiff has presented evidence that the Committee entertained purportedly negative commentary about Plaintiff's prior work history from female staff members in a Committee meeting held prior to the advertisement of the Caswell County CED vacancy, during which Plaintiff was not present. Regardless of the content of that discussion, the evidence shows that the Committee neither informed Plaintiff of the statements made nor afforded her an opportunity to defend against those statements. In addition, the evidence shows that the Committee met to discuss their purported concern about having only one candidate, that is, Plaintiff, just prior to and immediately after Plaintiff's first interview, even though Defendant admits that Plaintiff was a qualified candidate for the Caswell County CED position.

Furthermore, the evidence shows that the Committee hired Billy Merritt, a male applicant who, only two months prior, had been disqualified for failure to properly file his application. The evidence further shows that the Committee hired Mr. Merritt after only a ten-minute phone interview, including the time it took to read each of the twelve questions asked. Moreover, Plaintiff presented evidence that although the Committee praised Mr. Merritt for his letter of reference, as a proffered legitimate reason for hiring Mr. Merritt over Plaintiff, the Committee did not accept Plaintiff's letter of reference during the interview process. Such evidence shows, at the very least, that Plaintiff and Mr. Merritt were not treated equally during the selection process, and the Court concludes that a genuine issue of material fact exists as to

14

whether Plaintiff's gender was, at least in part, a motivating factor in Defendant's failure to promote her to CED of Caswell County.

> 2. Pretext Framework

In addition to showing a genuine issue of material fact under a mixed- motive analysis, the Court finds that there exists a genuine issue of material fact precluding summary judgment under the pretext framework. To demonstrate a prima facie case of discriminatory failure to promote under the McDonnell Douglas pretext framework, Plaintiff initially carries the burden of showing that (1) she is a member of a protected class; (2) there was an open position for which she applied; (3) she was qualified for the position in question; and (4) she was rejected under circumstances that give rise to an inference of discrimination. Williams v. Giant Food Inc., 370 F.3d 423, 430 & n.5 (4th Cir. 2004). The burden of establishing a prima facie case is not an onerous one. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). If Plaintiff makes out a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the challenged employment action. Hill, 354 F.3d at 285. If the employer meets its burden in this regard, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Reeves, 530 U.S. at 143, 120 S. Ct. at 2106).

In the present case, Plaintiff has presented sufficient evidence to make out a prima facie case of discrimination. Specifically, as to the first two elements, Plaintiff has presented evidence that she is a female, and that she applied for the vacant position of CED of Caswell County.

15

Furthermore, as to the third element, Plaintiff has presented evidence, and Defendant appears to admit, that Plaintiff was qualified for the CED position. To satisfy the fourth element, that is, that Plaintiff was rejected under circumstances giving rise to an inference of discrimination, Plaintiff need only show that the position was filled by an applicant not in the protected class, that is, a male. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); Johnson v. City of Charlotte, 229 F. Supp. 2d 488, 493 (W.D.N.C. 2002). The evidence shows that Defendant selected Billy Merritt, a male, to fill the vacant Caswell County CED position.

Once Plaintiff has made a prima facie case of discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision not to promote Plaintiff. In that regard, Defendant contends that it did not select Plaintiff for the position of Caswell County CED, and instead hired Mr. Merritt, because "Merritt had a better interview; his experience was better suited for the position; he had an excellent letter of reference from his former supervisor and he did not have a history of problematic habits like Plaintiff." (Def.'s Summ. J. Br. at 15, [Doc. #19]). Assuming, *arguendo*, that Defendant has proffered legitimate, nondiscriminatory reasons for not selecting Plaintiff for the Caswell County CED position, the burden again shifts to Plaintiff to present evidence that Defendant's proffered reasons are pretext for discrimination. As described in more detail above, Plaintiff has presented the statements of Walter ("Sam") Butler regarding the Committee's concern with having an all-female staff and a female CED in Caswell County. In addition, Plaintiff has presented evidence regarding the disparities between the selection process for Plaintiff and for the male applicant, and ultimate Selectee, Billy Merritt, including the disparity in the time spent by each candidate

16

on the interview, the fact that Defendant praised Mr. Merritt for his letter of reference but declined to accept a letter of reference from Plaintiff, and the fact that Mr. Merritt had previously been disqualified from the interview process for failure to follow directions. In addition, evidence that the Committee held multiple meetings to discuss their purported concerns with the single candidate, that is, Plaintiff, both inside and outside of the selection procedure, raises an inference of pretextual discrimination sufficient to overcome summary judgment at this time.

Based on all of the record evidence, the Court concludes that genuine issues of material fact exist under either framework set forth above such that granting summary judgment for Defendant would not be appropriate in this case. As such, the Court will deny Defendant's Motion for Summary Judgment as to Plaintiff's gender discrimination claim.

        C.      <u>Plaintiff's Retaliation Claim</u>

In addition to her gender discrimination claim, Plaintiff asserts a claim for retaliation under Title VII, 42 U.S.C. § 2000e-3(a), alleging that Defendant discriminated against Plaintiff during the second round of interviews for the vacant CED position because Plaintiff sought EEO counseling for alleged gender discrimination after her first interview. However, although Plaintiff, who is represented by counsel in this action, asserted retaliation allegations in her Complaint, she does not address her retaliation claim anywhere in her Response to Defendant's Motion for Summary Judgment and, therefore, appears to have abandoned that claim. In these circumstances, and pursuant to the Local Rules of this District, the Court will grant Defendant's Motion for Summary Judgment as uncontested with regard to Plaintiff's retaliation claim, and

will, therefore, dismiss Plaintiff's retaliation claim. See L.R. 56.1(d) ("The failure to file a response may cause the Court to find that the motion is uncontested.").

IV.     CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's Motion to Strike is DENIED without prejudice to the parties raising specific objections at trial as necessary. IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, as set forth herein. Specifically, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's retaliation claim, and such claim is hereby DISMISSED. However, Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's gender discrimination claim.

This, the 7th day of June, 2013.

/s/ James A. Beaty
United States District Judge